*Formatted for Electronic Distribution*                                                                                              *For Publication*

UNITED STATES BANKRUPTCY COURT
DISTRICT OF VERMONT

_____

Filed & Entered
On Docket
December 24, 2008

**In re:**
     **Elizabeth C. Campbell,**
          **Debtor.**

Chapter 13 Case
# 06-10570

_____

**Jan M. Sensenich, Trustee and
Elizabeth C. Campbell, Debtor,**
          **Plaintiffs,**
        **v.**

Adversary Proceeding
# 07-1023

**Ledyard National Bank,**
          **Defendant.**

_____

*Appearances:*   Norman Cohen, Esq.         Jan Sensenich, Esq.           Frank P. Urso, Esq.
                        Rutland, VT                         White River Jct., VT              Rutland, VT
                        *For the Debtor-*                   *Chapter 13 Trustee*             *For the Defendant*
                        *Plaintiff*                              *Pro Se*

**MEMORANDUM OF DECISION
ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**

      At issue in this case is whether certain conduct of a secured creditor, allegedly implementing Orders of this Court entered pursuant to 11 U.S.C. § 363 (the Sale Orders), violated the automatic stay. The chapter 13 trustee and the Debtor (together, the "Plaintiffs") had sought the Sale Orders to liquidate non-exempt property and satisfy the claim of the Debtor's primary secured creditor, Ledyard National Bank (the "Bank" or "Defendant"). Two days before the closing, the Debtor had not completely removed her personal property from the premises. The Bank, through its agents, removed the Debtor's personal property, in the process destroying some furniture and taking a dumpster full of property to the dump where the contents could not be recovered. The Plaintiffs sued the Bank, claiming willful violation of the automatic stay and seeking damages. The Bank answered that its actions were permitted by the Sale Orders which specifically allowed it to "undertake all such other steps as may be necessary, to effectuate the terms of this Order and the transfer of the Property to [the buyers]," and moved for summary judgment on the basis that its conduct did not violate the stay. The Plaintiffs cross-moved for summary judgment, seeking a determination that the Bank's conduct violated the stay. They also argued that because the issue of damages and the Bank's equitable defenses were fact-specific, summary judgment was inappropriate. For the reasons that follow, the Court denies in part and grants in part each of the cross-motions for summary judgment.

## JURISDICTION

This contested matter constitutes a core proceeding over which this Court has jurisdiction pursuant to 28 U.S.C. § 157(b)(2)(N) & (O) and § 1334.

## MATERIAL FACTS[1] AND PROCEDURAL HISTORY

### I.   Events Prior to Filing Bankruptcy Petition

Prior to the Debtor filing for bankruptcy relief, a state court foreclosure action entitled <u>Ledyard National Bank v. Campbell and Houghton</u>, #99-2-06 Rdcv, had been in progress, relating to properties the Debtor owned at 15-17 East Washington Street in Rutland, Vermont (the "Property"). The Debtor had lived in the Property in the 1980s and 1990s, and had conducted her accounting business there for twenty years (doc. # 22, Attachment # 3 (Campbell Aff.) ¶ 4). The Debtor described the office portion of the Property as including six fully-furnished offices, a conference room, reception area, kitchen area for employees, copying and fax room, which together contained "numerous antiques and articles of personal meaning and value." (Id. ¶ 5). In conjunction with the foreclosure action, the Debtor agreed to sell the Property, and had authorized her attorney to sign a stipulation in furtherance of the sale, (id., ¶ 3), which was scheduled for December 8, 2006 (doc. # 13, Ex. C).

On November 14, 2006, the Bank's attorney faxed a letter to Lisa Chalidze, Esq., the Debtor's attorney in the foreclosure action, stating that the auctioneer who would be selling the Debtor's Property had made several unsuccessful attempts to reach the Debtor to gain access to the Property to show it to prospective purchasers (doc. # 13, Ex. A). The letter went on to say that the Bank was entitled to possession of the Property (at 15 and 17 East Washington Street) based on the certificate of non-redemption and writ of possession issued by the state court on October 27, 2006, and that the Bank planned to change the locks on November 17 and 21. The letter concluded by stating: "Please inform your client of such so she can take whatever steps she might desire with respect to any of her property presently at [15 and 17 Washington Street]. Upon gaining possession, the Bank will safely store any such property until it receives direction on how and when your client wishes to proceed with it." Id.

On November 27, 2006, Ms. Chalidze responded to the Bank's attorney in writing, stating that she had received his two voice mails and faxed letter, as well as a message from the auctioneer, but had "not been able to reach my client for some time now, having tried several times over the past few weeks" (doc.

---

[1] While the parties include various statements of fact concerning what occurred both before and after the Debtor filed bankruptcy, including on February 20 and 21, 2007, the Court finds significant evidentiary defects with their assertions. The Defendant-Bank quotes from a number of documents, but does not attach copies of those documents in the record (see doc. # 13, attachment 2, ¶¶ 20, 22, 23), and relies solely on hearsay to support other statements of fact (id. ¶¶ 21, 24, 27). In her affidavit, the Plaintiff-Debtor also makes a number of statements of fact supported only by hearsay (see doc. # 22, ¶¶ 12, 15, 16), and the Plaintiff-Trustee makes statements based on hearsay and draws legal conclusions (see doc. # 15, ¶¶ 7, 9). These shortcomings, by all parties, have limited the "facts" that may be considered by the Court, as Statements of Fact are not themselves evidence but are intended rather to point to evidence in the record. The Court has not considered any factual statement contained in these documents that is not supported by record evidence. See Fed. R. Civ. P. 56(e); Fed. R. Bankr. P. 7056.

# 13, Ex. B). Ms. Chalidze further reported that she had forwarded the fax to the Debtor by "snail mail." Id. On the same day, in response to Ms. Chalidze's letter, the Bank's attorney wrote her, saying that a recent inspection of 15 East Washington Street had revealed that the Property contained "a large amount of personal property belonging to your client, including desks, computers, furniture and client files. In addition, the garage buildings are full of barn board and barn remains. At the auction to be held on December 8, the Bank will need to represent to potential purchasers that these items will be removed from the property prior to closing" (doc. # 13, Ex. C). The letter asked Ms. Chalidze to "[p]lease try to track your client down to inquire about her intentions with respect to her property. If she fails to respond with a plan, the Bank reserves the right to have the property removed and stored at her expense." Id.

Ms. Chalidze responded by fax on November 29, 2006, stating that she had spoken earlier that day with the Debtor, who had been quite ill (doc. # 13, Ex. D). According to Ms. Chalidze, the Debtor was "eager to retrieve her personal property from the properties to be auctioned, but apparently the volume is massive. She is attempting to locate workers and trucks, but so far has not been able to get everything coordinated." Id. Given that difficulty, Ms. Chalidze requested that the Bank "preserve the status quo at the properties" until Christmas to allow the Debtor time to remove as much as possible, coordinating access with the people who had the keys. Id. Later that day, the Bank's attorney received a telephone message from Ms. Chalidze's office asking whether a key was available so that the Debtor could pick up her things (doc. # 13, Ex. E).

Finally, on December 4, 2006, the Bank's attorney faxed a letter to Ms. Chalidze (mistakenly dated November 14, 2006) in which he stated:

> It would be in your client's best interests to remove all personal property from the premises, including the extensive amount of barn board on location. For, if, instead, the auctioneer must incur significant moving expenses to do so, it would certainly diminish, if not deplete, any equity in the properties.
>
> The Bank is willing to give your client until December 22, 2006 to remove said property. You can gain access by calling the auctioneer, Mr. Nathan at 362-3194, or Tom Moore, the caretaker of the premises at 353-8468. Both men have keys. If Ms. Campbell fails to remove the property by December 22, the Bank reserves the right to depose [sic] of it thereafter in any way convenient to it.

(doc. # 13, Ex. F).

## II. Events Subsequent to Filing Bankruptcy

On December 5, 2006, the Debtor filed her chapter 13 petition (doc. # 1 in # 06-10570). On December 6, 2006, the Debtor's bankruptcy attorney informed the Bank's attorney that the Debtor had filed for bankruptcy and asked when the Debtor could have access to the building (doc. # 13 in # 07-1023). Tom Moore, the Bank's representative, delivered the keys to the Debtor on that day or the next day. (Id.) This fact was confirmed by the Debtor who stated in her affidavit that Mr. Moore gave her a key

3

to the Property "in early December, 2006 at or near the time I filed my Ch 13 Petition" (doc. # 22, Campbell Aff., ¶ 6). She then began to pack her professional and personal belongings (including 15-20 boxes of active client files, personal articles, computers, and miscellaneous office supplies) and moved them to her home on Park Street or to the rear of 15 East Washington Street, making at least two trips in her pickup truck. (Id. ¶ 8, 9). The auction on both properties was conducted on December 8, 2006, resulting in two Purchase and Sale Contracts dated that day (doc. # 13 ¶ 5). Among the provisions in those contracts were the following: "Seller shall leave the premises broom clean, free from occupants, and shall remove all personal property not being sold hereunder together with the personal property of all occupants" (doc. # 14, ¶ 14), and "Eric Nathan Real Estate and Auction, Inc. shall remove all personal property present on the property as an expense of the sale on or before February 6, 2007, including property within the premises and its basement, as well as the garage located thereon, prior to closing" (doc. # 14, Addendum A, ¶ 2).

On December 20, 2006, the Bank's attorney sent Ms. Chalidze a letter in which he asserted: "I understand that so far your client has removed some of her files from 15 E. Washington. Please let me know whether and when she intends to remove all the other personal property contained therein as soon as possible" (doc. # 13, Ex. G).

On January 8, 2007, the Debtor and chapter 13 trustee filed a "Notice of Intent to Sell Debtor's Interest in Real Property Pursuant to 11 U.S.C. § 363(b) & (f) by Virtue of Consensual Foreclosure Sale" for each property (doc. ## 14, 15, # 06-10570). Included in the terms and conditions of sale was that "Eric Nathan Real Estate and Auction, Inc. shall have until February 6, 2007 to remove all personal property from the premises and basement as a cost of sale" (doc. # 14, ¶ 4d.). The Notices of Intent to Sell attached a copy of the Purchase and Sale Contracts and Addendum. (Id.)

The Court entered Orders on February 9, 2007 (the "Sale Orders") approving the sale of the real property located at 15 and 17 East Washington Street subject to various terms and conditions (doc. ## 29, 30). One of the conditions was that Eric Nathan Real Estate had "until February 6, 2007 to remove all personal property from the premises and basement as a cost of sale" (doc. # 30, ¶ 5b). The Sale Orders also provided that "The Debtor, the Trustee, and Ledyard National Bank are authorized and directed to execute, deliver and carry out the terms of any and all documents and instruments that may be required, and undertake any action that may be required, and to undertake all such other steps as may be necessary, to effectuate the terms of this Order and the transfer of the Property to [the buyers]." Id. ¶ 8. The closing was scheduled for February 23, 2007 (doc. ## 1, 14).

Apparently, on February 20 and 21, 2007, a crew arrived and removed property from 15 East Washington Street. The Plaintiff asserted that she visited the Property late in the afternoon on February 21 and was "devastated" by what she saw: "I observed a dumpster filled with my property, including business equipment, many life-long possessions, collections and collectibles. This dumpster was located in the

4

driveway at the side of 15 East Washington Street" (doc. # 22 ¶ 11). She also observed one of the men "cutting with a Sawzall into the back of an antique sofa" located on the second floor; she asked that it be put in her truck, but when she returned from looking around the building, "this sofa was cut into several pieces and had been placed in the dumpster." (Id., ¶ 13). The Debtor stated that she was able to have that dumpster, which contained "destroyed furniture, the destroyed sofa, tax reference books, files, and miscellaneous items of personalty," delivered to her house. (Id. ¶ 14). She asserted that she learned that another dumpster full of her property had been taken to the Rutland Landfill that morning. She immediately went to the landfill but was advised that that dumpster had been unloaded and its contents removed. (Id., ¶ 15). At no point on February 20 or 21, 2007 did Bank agents notify the Trustee of the Bank's disposition of the Debtor's personal property (doc. # 15, ¶ 8). The Bank has not disputed the Debtor's account of what happened to her personal property.

The bankruptcy main case involved extensive litigation. The Bank objected to confirmation and, after a hearing on October 16, 2007, the Court denied confirmation based upon feasibility and ordered the Debtor to file amended schedules (doc. # 66 in # 06-10570). Shortly thereafter, the Bank filed a motion to convert the case to chapter 7, which the Court denied (doc. # 84). At a hearing on December 11, 2007, the Court confirmed the Debtor's plan (doc. # 88). Subsequently, the Bank moved to compel the Debtor to comply with the Court's Order and for sanctions based on the Debtor's failure to provide operating reports as required in the confirmation order (doc. # 126); after a hearing, the Court found the Debtor in default of her filing obligations, granted the motion, and directed the Debtor to pay $250 to reimburse the Bank for attorney's fees it had incurred in bringing the motion (doc. # 133).

When the Debtor filed this bankruptcy case, her Schedule B did not list any personal property at 15 and 17 East Washington Street. It listed and valued personal property only at the Debtor's residence (doc. # 1). On June 19, 2007, the Debtor filed an Amended Schedule B which included "Property stored at 15 East Washington Street Debtor's residence or destroyed -- $80,000"; it provided no itemization (doc. # 47).

The Debtor and Trustee filed the instant Adversary Proceeding on November 13, 2007 (doc. # 71). After discovery was completed, the Bank filed a motion for summary judgment (doc. # 13 in A.P. # 07-1023). The Trustee opposed the motion for summary judgment, and filed a cross-motion for partial summary judgment (doc. # 15), as did the Debtor (doc. # 22). The Debtor also filed an unopposed motion to strike three paragraphs from the Bank's Statement of Facts (doc. # 23); the Court granted that motion (doc. # 27) and denied the Bank's subsequent motion to reconsider (doc. # 32). The Debtor filed an affidavit in support of its motion (doc. # 22; doc. # 25 is the same affidavit with photocopies attached). The summary judgment motions are fully briefed and ready for resolution.

Based upon the foregoing, the Court finds that the material, undisputed facts before it are sufficient to enter judgment on the cross-motions for summary judgment.

5

### III. The Parties' Arguments

The Complaint set forth two counts. In the first count, the Plaintiffs alleged that the Bank gave them no notice of its intention to remove, dispose of, or destroy property of the estate; that the Bank did not apply to the Court for relief from the automatic stay; and, as a result, the destruction of estate property violated the automatic stay, in particular § 362(a)(3),[2] which prohibits any act exercising control over the property of the estate. The Plaintiffs claimed they were entitled to recover actual damages in excess of $50,000 plus attorney's fees and costs. The second count alleged that the Defendant's actions in destroying estate property were willful violations of the automatic stay, which entitled Plaintiffs to punitive damages as provided by § 362(k). Plaintiffs have also sought a remedy under the Court's civil contempt powers, in addition to the specific remedies provided under § 362(k) (doc. # 1).

In its summary judgment motion, the Bank set out "four reasons why summary judgment should be entered in its favor" (doc. # 13). First, it argued that there was no stay violation because the stay had been lifted, at the Plaintiffs' request, by virtue of the Notices of Intent to Sell and entry of the Sale Orders – which contained the provision that the Debtor, Trustee, and Bank could undertake all steps to effectuate the terms of the Orders, including the removal of personal property from the premises. The Bank reasoned that since the Court ordered the parties to do what the Plaintiffs claimed was actionable, its actions were judicially sanctioned, it did not violate the stay, and therefore the complaint must be dismissed. Even assuming <u>arguendo</u> that it had violated the stay, the Bank asserted that its actions were not willful (citing the willfulness standard that the Bank would have had to know of the stay and had intended to take actions to violate the stay). The Bank contended that it had "no reason to believe the automatic stay was still in place," given the Notices of Intent to Sell and the unqualified language of the Sale Orders, which authorized the Bank to take any action necessary to effect the sale. As a result, the Bank insisted that, based on these documents, it had reason to believe its actions were lawful -- which would preclude a finding of willfulness. Third, the Bank asserted that the relief requested was not appropriate under the circumstances, and pointed to a section of its Factual Statement entitled "Additional Evidence of Debtor's Neglect," which recited how the Debtor had acknowledged her obligation to remove her property prior to the sale but neglected to do so, which invoked equitable defenses of laches, estoppel, waiver, and contributory and comparative negligence. Finally, the Bank claimed that the Trustee was not an "individual" under § 362(k)(1) and hence was not entitled to the relief requested (doc. # 13).

In his memorandum of law, the Plaintiff Trustee argued that the Sale Orders did not provide relief from stay as to any of the Debtor's personal property because the Sale Orders were not founded upon any motion for relief from stay; they did not refer to the automatic stay at all and did not lift or terminate the stay regarding the personal property in the buildings. Therefore, he concluded that the stay was in effect

---

[2] All statutory citations herein refer to Title 11, United States Code (the "Bankruptcy Code") unless otherwise indicated.

6

when the Bank's agents and employees began removing estate assets from the property. Further, the Trustee emphasized that the language of the Sale Orders did not authorize destruction of the personal property in the building. At the time the Bank cleaned out the buildings, it knew the Debtor was in bankruptcy, knew that the stay was in effect, and placed the items in the dumpster intentionally, which made its violation willful. He noted that the Bank dumped the items of personal property into dumpsters without providing any notice to him, and some of the property was lost to the estate as a result of those actions. The Trustee added that because the Bank drafted the Orders, their terms should be construed against the Bank. The Trustee contended that the Court should first determine that the Bank violated the automatic stay, and then, with the development of additional evidence, determine the amount of damages, both actual and punitive. He also asked that the Court hold the Bank in contempt for violating a court order (doc. # 15).

The Plaintiff-Debtor repeated many of the Trustee's arguments: (1) the Bank has provided no authority to support its argument that the Sale Orders were the legal equivalent to a relief from stay order, particularly given the Bank's experienced bankruptcy and trial counsel (who presumably would understand the difference); (2) only the auctioneer was authorized to remove personal property, and the Sale Orders did not authorize the Bank to undertake that task on behalf of the auctioneer without a court order; (3) once it undertook to remove property, the Bank had a duty to do so responsibly; (4) the Bank's actions were "willful" in relation to the Debtor's property; and (5) the Debtor is entitled to compensatory and/or punitive damages (doc. # 22).

**DISCUSSION**

**I.     Pertinent Statutory Provisions**

Two provisions of the Bankruptcy Code pertain to the issues in this proceeding: the automatic stay provision, § 362, and the sale provision, § 363.

**A.     The Automatic Stay**

"The legislative history of 11 U.S.C. § 362 reveals that 'the automatic stay is one of the fundamental protections provided by the bankruptcy laws.'" Henkel v. Lickman (In re Lickman), 297 B.R. 162, 187 (Bankr. M.D. Fla. 2003) (quoting 3 Collier on Bankruptcy ¶ 362.06 at 362-76 (15th ed. rev. 2003)). Section 362(a) stays the commencement or continuation of virtually all proceedings against a debtor that were or could have been commenced before the debtor filed for bankruptcy. It undergirds an important purpose of bankruptcy law: "providing debtors with a fresh start, protecting the assets of the estate, and allowing the bankruptcy court to centralize disputes concerning the estate." MBNA America Bank, N.A. v. Hill, 436 F.3d 104, 109 (2d Cir. 2006). "'The general policy behind this section is to grant complete, immediate, albeit temporary relief to the debtor from creditors, and also to prevent dissipation of the debtor's assets before orderly distribution to creditors can be affected.'" S.E.C. v. Brennan, 230 F.3d 65, 70 (2d Cir. 2000) (quoting Penn Terra Ltd. v. Dep't of Envtl. Resources, 733 F.2d 267, 271 (3d Cir.

7

1984)).

The relevant subsection of the stay provision, § 362(a), provides in part:

(a) Except as provided in subsection (b) of this section, a petition filed [under the Bankruptcy Code] ... operates as a stay, applicable to all entities, of-

   (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

   * * *

   (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate....

11 U.S.C. § 362(a). The term "act" referred to in § 362(a)(3) is "broadly construed," 3 Collier on Bankruptcy ¶ 362.03[8][a], and "Congress intended this provision to be liberally construed to fortify the protections of the automatic stay." In re Flack, 239 B.R. 155, 162 (Bankr. S.D. Ohio 1999). The automatic stay "is effective as of the moment of filing of the bankruptcy petition." In re Crawford, 388 B.R. 506, 517 (Bankr. S.D.N.Y. 2008) (citation omitted).

Section § 362(k)(1) of the Code allows for the recovery of compensatory and punitive damages for willful violations of the automatic stay. It states:

Except as provided in paragraph (2), an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.

11 U.S.C. § 362(k)(1). This provision "mandates an award of actual damages to an individual where the violation is willful, and the Court has discretion to assess punitive damages. . . .A violation of the automatic stay is just that, a violation of the automatic stay – there is no such thing as a slight violation." Crawford, 388 B.R. at 518 (citations omitted).

**B. Bankruptcy Sales**

The other pertinent section of the Bankruptcy Code, § 363, concerns "use, sale, or lease of property." The subsection relevant here provides:

The trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate . . .

§ 363(b)(1).

Property of the estate is broadly defined as "all legal or equitable interests of the debtor in property as of the commencement of the estate." § 541(a)(1). Under that definition, both the real property, and the Debtor's personal and/or business property contained in the real property, is included in property of the estate, see Ozenne v. Bendon (In re Ozenne), 337 B.R. 214, 220 (9th Cir. BAP 2006); cf. In re Taft, 184 B.R. 189, 192 (E.D.N.Y. 1995), and is entitled to the protection of the automatic stay.

8

## II. Did the Bank Violate the Automatic Stay?

The threshold issue is whether the Sale Orders somehow modified the automatic stay with respect to the Property (that had been sold) and her personal property (that remained in the buildings after the real estate had been sold). In particular, was paragraph 8 of the Sale Order – which allowed the Bank to "undertake any action that may be required, and to undertake all such other steps as may be necessary, to effectuate the terms of this Order and the transfer of the Property to [the buyers]" – tantamount to relief from stay, such that it granted the Bank the right to both remove and dispose of the Debtor's personal property, even though the Bank had never filed a motion seeking relief from stay?

An important point to stress at the outset is that the Notices of Intent to Sell were issued jointly by the Debtor and the Trustee (doc. ## 14, 15; see Fed. R. Bank. P. 6004(a)), which obviated any need for the Bank to obtain relief from stay to sell the real property. By filing the Notices of Intent to Sell, the Debtor and Trustee were implicitly removing the real property – which would ordinarily be protected from sale by the automatic stay – from the estate, with the estate's interest to shift to the proceeds of sale. The Bank did not object to the Notices of Intent to Sell, and the Property was in fact sold pursuant to the Notices of Intent to Sell on December 8th. The subsequent Sale Orders indicated that the Debtor, Trustee, and Bank would collaborate in effectuating the closing. The pertinent provision contained in both the Notices of Intent to Sell and the Sale Orders indicated that "all personal property" would be removed from the premises prior to the closing.[3] There is no dispute that what remained of the Debtor's personal property was removed by the Bank's crew on February 20 and 21, 2007, shortly before the scheduled closing on February 23. There is also no dispute that when the crew removed that property, it destroyed some furniture in the process. There is no dispute that they filled two dumpsters, and that the Debtor was able to retrieve personal property in one of the dumpsters but was unable to retrieve the contents of the other dumpster, which had been taken to the landfill and unloaded.

Although written broadly, Paragraph 8 of the Sale Orders allowed the parties to "undertake any action that may be required" to effectuate the terms of the sale set forth in the documents. The relevant terms of the Notices of Intent to Sell and Sale Orders concerned "remov[ing] all personal property from the premises and basement" (doc. # 14, 15, 29, 30), as well as "leav[ing] the premises broom clean, free from all occupants and . . . remov[ing] all personal property not being sold . . . together with the personal property of all occupants" (doc. # 14, Addendum A). The documents therefore permitted <u>removal</u> of property from the building, however effected; it did not authorize <u>destruction and loss</u> of that property, a qualitatively different result which the Notices of Intent to Sell and Sale Orders do not implicitly or explicitly permit. The Court finds that reading permission to destroy and dispose of the Debtor's personal property into those documents is neither reasonable nor consistent with the plain language of the docu-

---

[3] Oddly, the Sale Orders, filed on February 9, 2007, stated that the auctioneer had until February 6, 2007 to remove all personal property from the premises and basement. That provision had not been complied with as of February 9th.

ments. Removal is not synonymous with destruction. See Casse v. Key Nat'l Bank Ass'n (In re Casse), 198 F.3d 327, 333 (2d Cir. 1999) (stating that "[t]he bankruptcy court [is] in the best position to interpret its own orders") (internal quotation marks omitted). The Sale Orders did authorize the Bank to remove the personal property from the building. Because that personal property was property of the estate, the Bank had a duty to remove that property in a way that preserved it. In controlling the Debtor's personal property, the Bank had no authority to unilaterally determine some of that property to be "trash" or to destroy it (doc. # 13, p. 4). Destruction of property of a bankruptcy estate, without court approval, is a violation of the automatic stay.

While there are no cases on all fours with the facts and procedural posture of this case, there are cases with analogous or similar circumstances that reach the same conclusion. These cases generally discuss the contours of a stay in relation to motions for relief from stay (or the lack thereof) or abandonment of property of the estate. For example, in Nigro v. Oxford Development Co. (In re M.J. Shoearama, Inc.), 137 B.R. 182 (Bankr. W.D.Pa. 1992), the defendant locked the debtor out of its place of business prior to the debtor filing a bankruptcy petition, complained that it was incurring the ongoing cost of storing the debtor's property, and disposed of the debtor's inventory and fixtures without filing a relief from stay motion or a motion to compel the case trustee to abandon the debtor's property. The court held that those circumstances did not excuse or justify the defendant's unilateral action in disposing of the debtor's property, particularly when the defendant could have filed a motion to abandon pursuant to § 554(b), rather than resorting to "self help," and held the defendant had violated § 362(a)(3). Id. at 188-89. Similarly, in Kaiser v. Leader Federal Bank for Savings, 158 B.R. 808 (Bankr. D.Neb. 1993), after the debtor filed her bankruptcy petition, the mortgagee entered the debtor's home and threw away the debtor's personal property that remained in the premises. The Court held that "any right that the mortgagee had under non-bankruptcy law … to exercise control over the property was limited by § 362" upon the filing of the case, and that the mortgagee "violated § 362(a)(3) by taking possession of property of the estate" and by failing "to surrender and turn over the personal property it caused to be removed." Id. at 812. Likewise, in In re B. Cohen & Sons Caterers, Inc., 97 B.R. 808 (Bankr. E.D. Pa. 1989) (aff'd in relevant part, 108 B.R. 482 (E.D. Pa. 1989)), the bankruptcy court held that a landlord, who had obtained relief from stay for the limited purpose of regaining possession of its premises, violated the stay when it destroyed and disposed of the debtor's property. Cohen, 97 B.R. at 814. Cohen indicates that even within the parameters of a relief from stay, destruction of estate property will not be countenanced by the court. See also In re Toll, 175 B.R. 406 (Bankr. N.D. Ala. 1994) (seller of house began eviction proceedings; debtors filed bankruptcy indicating they proposed to surrender house; seller removed and destroyed debtors' possessions; court found seller's conduct violated automatic stay).

Although none of the parties have raised this point, § 542 of the Code also provides guidance as to what would have been proper treatment of the Debtor's personal property in this case – regardless of

whether the Sale Orders are effectively the equivalent of a relief from stay order:

> [A]n entity other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title, shall <u>deliver to the trustee</u>, and account for, <u>such property</u> or the value of such property, unless such property is of inconsequential value or benefit to the estate.

11 U.S.C. § 542(a). Thus, while ¶ 8 of the Sale Order allowed the Bank to remove the personal property from the premises, § 542 of the Code dictated that, once the Bank had control over the Debtor's personal property after it cleaned out the buildings, it was obliged to preserve the estate property and turn it over to the trustee. This provision is not applicable if such property is "of inconsequential value" to the estate. In the Debtor's amended Schedule B, she valued the personal property at 15 East Washington Street at $80,000 (doc. # 47). Section 542 makes clear that a creditor who wishes to dispose of personal property must, at the very least, contact the case trustee before doing so and obtain the trustee's consent, or a court order, documenting that the property in question is of inconsequential value. The Bank did not do that. In <u>Ward v. Edwards</u>, 2007 WL 3046133 at *2-3 (N.D.Ill. Oct. 10, 2007), an evicted tenant sued his landlord for violating the automatic stay when the landlord emptied his personal property from his apartment after he filed for bankruptcy. Instead of resting its holding on whether § 362(b)(22) (the stay provision relating to evictions) had been violated, the court focused on the "independent duty" placed upon the landlord under Section 542(a) to turn over the property of the debtor's estate (valued at $3,500) to the bankruptcy trustee. Having received notice of the bankruptcy filing, the landlord "had an affirmative duty to take steps to deliver [the debtor's] personal property to the Trustee" which included contacting the Trustee. <u>Id.</u> at * 3. The landlord instead "ordered the personal property to be placed in front of the apartment building unattended resulting in the loss and destruction of the property. [The landlord] thus violated Section 542(a) when [he] had [the debtor's] personal belongings removed from the Apartment." <u>Id.</u>

Accordingly, the Court finds that the Bank had a duty under both §§ 362 and 542 to preserve the Debtor's personal property, and that the Bank violated the automatic stay in destroying and disposing of the Debtor's personal property, since the only relief the Sale Orders provided to the Bank vis a vis the Debtor's personal property was the right to remove it.

## II.   Did The Bank Willfully Violate the Stay?

The standard for actions constituting a willful violation of the automatic stay is well established. "A creditor acts willfully if it (1) has knowledge of the [bankruptcy] petition, and (2) the act which violates the stay was intentional." <u>In re Sullivan</u>, 367 B.R. 54, 62 (Bankr. N.D.N.Y. 2007) (citing <u>In re Turner</u>, # 04-66972, slip op. at 9 (Bankr.N.D.N.Y.2006)) (in turn citing <u>Crysen/Montenay Energy Co. v. Esselen Assoc., Inc.</u>, 902 F.2d 1098, 1105 (2d Cir.1990)). <u>See</u> 3 <u>Collier on Bankruptcy</u> ¶ 362.11[3] (15th ed., rev. 2007) ("Once the creditor becomes aware of the filing of the bankruptcy petition and therefore the automatic stay, any intentional act is 'willful.'"). The <u>Sullivan</u> Court further explained that:

11

> [a] willful violation of the stay does not require specific intent to violate the stay. A party can be subject to liability under 362(h) [now § 362(k)(1)] if it engages in conduct which violates the automatic stay, with knowledge that a bankruptcy petition has been filed. In determining whether a stay violation was willful, it is irrelevant whether the party believed in good faith that it had a right to the property at issue. Not even a good faith mistake of law or a legitimate dispute as to legal rights relieve a willful violator of the consequences of his act.

Sullivan, 367 B.R. at 62 (citation omitted). See also In re Braught, 307 B.R. 399, 403 (Bankr. S.D.N.Y.2004) (holding that "[i]n the Second Circuit, if a party charged with violating the stay knows that the stay is in effect ... its intention or lack thereof to violate the stay is irrelevant."); In re Layton, 220 B.R. at 517 (holding that "a good faith mistake of law does not relieve a willful violator of the consequences of the act.") (citations omitted).

There is no question that the Bank knew that the Debtor had filed bankruptcy and thus that the automatic stay was in effect, as the Bank filed a notice of appearance in the bankruptcy case on December 8, 2006, two and a half months prior to the contested actions in February 2007. As for whether the acts violating the stay were intentional,[4] the Second Circuit in Crysen/Montenay concluded that "any deliberate act taken in violation of a stay, which the violator knows to be in existence, justifies an award of actual damages." 902 F.2d at 1105. The Court finds that the actions by the Bank's crew in taking the Debtor's personal property to the dump, where it was lost, and destroying some of the furniture, were deliberate and intentional, and the Bank may be held liable pursuant to the principle of agency. See Lakeside Equip. Corp. v. Town of Chester, 173 Vt. 317, 325, 795 A.2d 1174, 1181 (2002). Because the Bank knew about the bankruptcy filing, and performed intentional acts that violated the stay, its violation was willful. See In re Baumblit, 251 B.R. 444, 445 (E.D.N.Y. 2000) (holding that an award of actual damages was appropriate – i.e., that the creditor's actions were willful – where the creditor took a deliberate act in violation of the stay and had knowledge of the bankruptcy).

The Bank's defense is that its actions were justified and were not willful because "it had no reason to believe the automatic stay was still in place in light of the Plaintiffs' Notice of Intent to Sell, the [Sale] Order and the unqualified terms thereof" (doc. # 13, pp. 4-5). In essence, the Bank asserts that it acted on its good faith belief that (1) no stay was in effect or, if there was, then (2) the Notices of Intent to Sell and the Sale Orders permitted its actions. As Sullivan notes, a good faith mistake of law will not relieve a willful violator of the consequences of its act. Accord In re Saratoga Springs Plastic Surgery, P.C., 2005 WL 357207 at * 4 (N.D.N.Y. Feb. 11, 2005) (stating that the "good faith" standard for determining whether there is a willful violation of the stay does not apply under § 362(h)). Based on this case law, as well as cases holding that § 362 is to be broadly construed, see, e.g., In re Wright, 328 B.R. 660, 663 (Bankr.E.D.N.Y.2005) (holding that § 362 should be liberally construed "to ensure that debtors receive

---

[4] The Bank has not disputed that its agents disposed of the Debtor's personal property.

12

the protection of the automatic stay"), the Court rejects the Bank's argument that it did not act willfully, and finds that the Bank willfully violated the stay.

The question of the amount of actual damages, and whether punitive damages should be assessed, require factual determinations and cannot be adjudicated through summary judgment. The Court will schedule an evidentiary hearing on those issues. Similarly, the equitable defenses proffered by the Bank are fact-sensitive and will require a hearing to establish the facts.

### III.  May the Trustee Recover Damages Based on the Bank's Stay Violation?

Section 362(k)(1) provides that an "individual" injured by any willful violation of the automatic stay may recover damages. The Bank contends that the bankruptcy trustee, who represents a thing – the bankruptcy estate of an individual – is not an "individual" entitled to recover the type of damages (actual and punitive) sought in this case[5] (doc. # 13, p. 7). The Trustee responds that the issue of whether a trustee can recover punitive damages under § 362(k), or whether a court may award sanctions based on its contempt powers, should wait until after the evidentiary hearing and the Court's ruling on whether the actions of the Bank justify punitive damages (doc. # 15, p. 10). The Trustee seeks a ruling that the Bank violated the automatic stay and should be held liable to the estate (via the Trustee) in the amount of the loss plus costs including reasonable attorneys fees. Id.

The Court disagrees with two aspects of the Trustee's argument. First, the Complaint seeks both actual and punitive damages, not simply punitive damages as the Trustee contends. Second, the question of whether the Trustee may sue for actual and/or punitive damages is a legal question, which may be determined on summary judgment. Although the Trustee has not briefed the issue, he had the opportunity to do so and therefore the Court will rule on that issue.

The leading Second Circuit case that has interpreted the damages provision of § 362 is Maritime Asbestosis Legal Clinic v. LTV Steel Co., Inc. (In re Chateaugay Corp.), 920 F.2d 183 (2d Cir. 1990). The issue in Chateaugay was whether a corporate debtor that had asserted a violation of the automatic stay could recover damages for a creditor's willful violation of the stay. The Second Circuit applied principles of statutory construction to interpret then-section 362(h),[6] observing that the Code did not define "individual." After it examined other sections of the Code, the Court concluded that "Congress used the word 'individual' rather than 'person' to mean a natural person" and that "a bankruptcy court may impose sanctions pursuant to § 362(h), under the standard set out in Crysen/Montenay [for willful violation of a stay] only for violating a stay as to debtors who are natural persons. For other debtors, contempt proceedings are the proper means of compensation and punishment for willful violations of the

---

[5] The Bank also points to the Trustee's admission in his Mediation Statement that he was not an individual under the meaning of § 362(k) (doc. # 13, pp. 7-8). The Bank did not provide a copy of this document, and it is not at all clear that it would be admissible in any event.

[6] This provision was amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA )and is now found at § 362(k)(1).

13

automatic stay." Id. at 184, 187.

Chateaugay provides some insight as to the reach of § 362(k)(1) in this Circuit, but it does not answer the question presented here: whether a trustee may recover damages under that provision. The trustee is a natural person, as opposed to a corporation, but he does not represent himself in this lawsuit. He represents a legal entity, the bankruptcy estate, which has been injured by the Bank's violation of the stay; he has not been personally injured by that violation.

The Court finds persuasive the Ninth Circuit's analysis in Havelock v. Taxel (In re Pace), 67 F.3d 187 (9th Cir. 1995). In that adversary proceeding, the chapter 7 trustee sued former counsel for the debtors in a legal malpractice action; was awarded summary judgment, which included costs and attorneys fees; the defendant-counsel appealed and the BAP affirmed; counsel appealed again and the Circuit Court affirmed. In discussing whether the trustee was an individual under then-§ 362(h), the Court observed:

> [W]hile a trustee can be an 'individual' if the trustee is a natural person (as opposed to, e.g., a corporate entity), the individual's status as trustee precludes any finding that the trustee suffered any damages as an individual, because any harm suffered in the form of costs and attorney's fees is actually incurred by a thing, viz., the bankruptcy estate, and not by the trustee as a natural person.

67 F.3d at 193 (citing In re Pace, 159 B.R. 890, 905-06 (9th Cir. BAP 1993) and Martino v. First Nat'l Bank in Harvey (In re Garofolo's Finer Foods, Inc.), 164 B.R. 955, 972-73 (Bankr. E.D.Ill. 1994)). The Pace Court then concluded that a chapter 7 trustee was not an individual for purposes of then-§ 362(h) entitled to recover attorney's fees as damages. Id. Put another way, while the trustee was an "individual," he was not an "individual injured by" a violation of the stay pursuant to § 362(h). This restrictive reading of "individual" is in line with the Second Circuit's Chateaugay decision.

The Pace Court then held that § 105(a) of the Code provided a viable alternative basis for awarding costs and attorney's fees to the trustee, regardless of whether damages were available under § 362(h), as a sanction for ordinary civil contempt. Id. at 193. The difference, however, was that "an award of damages under section 362(h) is mandatory, [but] an award of damages under section 105(a) is discretionary." Id. Numerous courts have followed the Pace reasoning, in upholding damage awards under § 105(a) to trustees for willful violations of the automatic stay. See Jove Engineering, Inc. v. I.R.S., 92 F.3d 1539, 1554 (11th Cir. 1996); Gecker v. Gierczyk (In re Glenn), 379 B.R. 760, (Bankr. N.D.Ill. 2007) (explaining rationale based on extensive statutory analysis of damages provision). See also In re Schissler, 2007 WL 3254360 * 4 n.8 (Bankr. N.D.N.Y. Nov. 2, 2007) (awarding trustee damages in the form of costs and attorney's fees under § 105(a) for violations of the automatic stay, and noting that "courts have concluded that a trustee is not an 'individual' entitled to recover such damages pursuant to former § 362(h)). Collier's reading of § 362(k)(1) supports this position:

> Although the automatic stay is of critical importance in bankruptcy cases, the better approach is to recognize that section 362(k) provides a remedy only for natural persons. The provision was enacted in 1984 as part of a package of consumer amendments intended to

deal with individual bankruptcy. If Congress had intended to provide a damage remedy for all debtors, it could easily have chosen a word other than "individual" to denominate the beneficiaries of the remedy. In fact, although the standard and procedures for contempt may be slightly more demanding, courts have had little difficulty in dealing with and punishing stay violations even without the availability of section 362(k). There is little reason to adopt a tortured reading of the statute in order to provide corporate or partnership debtors or trustees with a remedy for stay violations.

3 Collier on Bankruptcy, ¶ 362.11[3].

The Court therefore determines, as a matter of law, that the Trustee is not eligible to sue for damages pursuant to § 362(k)(1), but may seek sanctions under the Court's contempt powers pursuant to § 105(a). The Trustee asked that the Bank be held in contempt for willfully violating a court order and that the estate be awarded damages (doc. # 15, p. 8). Having ruled that such relief is available, the Trustee may pursue that relief through evidence to be presented at the hearing.

## CONCLUSION

For the reasons set forth above, the Court makes the following findings of fact and conclusions of law. First, summary judgment is proper. Second, the Sale Orders did not authorize the destruction or disposal of the Debtor's personal property. Third, the Bank willfully violated the automatic stay. Fourth, the Bank may be held liable for damages under § 362(k)(1) for any injury it caused the Debtor when it violated the automatic stay. Fifth, while the case trustee may seek damages under the Court's contempt powers pursuant to § 105(a), he has no right to recovery under § 362(k)(1).

Accordingly, the Court denies the Bank's motion for summary judgment to the extent the Bank sought a determination that it did not violate the automatic stay or, even if it did, its violation was not willful, and that it was not liable for damages caused by any such violation. The Court grants the Bank summary judgment on the point that the trustee may not obtain damages as an "individual" injured by the stay violation pursuant to § 362(k)(1). The Court grants the trustee's and the Debtor's cross-motions for partial summary judgment on the issues of whether the Bank willfully violated the automatic stay and is liable for damages flowing from the injury caused by such violation. The Court denies the trustee's cross-motion for summary judgment to the extent he seeks to recover damages pursuant to § 362(k)(1), but grants the trustee the right to pursue damages for contempt pursuant to § 105(a).

This constitutes the Court's findings of fact and conclusions of law.

_____

December 24, 2008  
Rutland, Vermont

Colleen A. Brown  
United States Bankruptcy Judge